UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| APARICIO B.,[1]<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>　　　　Defendant. | Case No.  20-cv-06510-RMI<br><br>**ORDER RE: CROSS MOTIONS FOR<br>SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 19, 22 |

Plaintiff, seeks judicial review of an administrative law judge ("ALJ") decision denying his application for benefits under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council, thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 9 & 10), and both parties have moved for summary judgment (dkts. 19 & 22). For the reasons stated below, Plaintiff's motion for summary judgment is granted, Defendant's motion is denied, and the case is remanded for further proceedings.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

United States District Court<br>Northern District of California

1    "substantial evidence" appears throughout administrative law and directs courts in their review of

2    factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

3    Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as

4    adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

5    197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In

6    determining whether the Commissioner's findings are supported by substantial evidence," a

7    district court must review the administrative record as a whole, considering "both the evidence

8    that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v.

9    Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where

10   evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676,

11   679 (9th Cir. 2005).

## PROCEDURAL HISTORY

13          On December 15, 2017, Plaintiff filed applications for Title II and Title XVI benefits,

14   alleging an onset date of January 7, 2015, as to both applications. *See* Administrative Record "*AR*"

15   at 21.[2] As set forth in detail below, the ALJ found that Plaintiff was not disabled and denied the

16   applications on April 1, 2020. *Id*. at 21-29. The Appeals Council denied Plaintiff's request for

17   review on July 20, 2020. *See id*. at 1-5. Thereafter, on September 16, 2020, Plaintiff sought review

18   in this court (dkt. 1) and argued that the ALJ failed to give legally adequate reasons for rejecting

19   his testimony regarding the nature, extent, and consequential limitations of his symptoms. *See*

20   Pl.'s Mot. (dkt. 19) at 12-17. Defendant contends that no such errors were committed, and that the

21   ALJ properly found that Plaintiff's subjective complaints were inconsistent with the record. *See*

22   Def.'s Mot. (dkt. 22) at 4-11.

## SUMMARY OF THE RELEVANT EVIDENCE

24          Given that the court finds error in the ALJ's evaluation of Plaintiff's pain and limitations

25   testimony, the following is a statement of the evidence that is relevant to that conclusion. By way

---

[2] The *AR*, which is independently paginated, has been filed in several parts as a number of attachments to Docket Entry #14. *See* (dkts. 14-1 through 14-18).

*United States District Court*
*Northern District of California*

of background, however, the court will first note a few biographical details. Plaintiff, who is now 57 years old, worked as a journeyman plumber from 1985 until January of 2015 when he became unable to continue working due to his various medical conditions (including osteoarthritis, bursitis, and gout). *See* Pl.'s Mot. (dkt. 19) at 6; *see also* AR at 52, 393. Since he became unable to work in January of 2015, Plaintiff has been receiving public assistance while experiencing homelessness, living in a friend's van, and taking meals at his brother's house. *Id*. at 51-52, 56-57.

On March 16, 2018, Plaintiff submitted a function report on a form entitled, "Exertion Questionnaire" – through which he described the nature and extent of his symptoms and some of the consequential limitations. *See id*. at 318-20. Therein, Plaintiff noted that pain, fatigue, weakness, and dizziness prevent him from being able to work. *Id*. at 318. When asked to describe the kinds of things he does on an average day, Plaintiff stated that he tries to walk but that, invariably, he has to stop due to pain. *Id*. He added that he can walk about 4 to 6 blocks before getting tired. *Id*. Plaintiff also noted the following: that he cannot climb stairs; that he is unable to lift objects that are heavier than 5 pounds; and that he lives on the streets due to his pain and financial circumstances. *Id*. at 319-20.

Thereafter, on February 27, 2020, Plaintiff testified at a hearing before the ALJ. *See id*. at 49-71. When asked why he is unable to work, Plaintiff testified that it is because of pain in his knees, elbows, wrists, shoulders, neck, and feet. *Id*. at 52. More specifically, he testified that he was laid off from his last plumbing job because his widespread joint pain made it increasingly difficult for him to lift anything. *Id*. at 58-59. He then testified that his hands had become so weak that, even when trying to lift something as light as six pounds, both hands would start shaking. *Id*. at 59. He then added that the pain and weakness in both hands also operated to interfere with his ability to grasp or hold objects, including objects as light as a cup of coffee. *Id*. at 59-60. Regarding his shoulders, Plaintiff testified that his arthritic pain has rendered him unable to lift his arms above the shoulder level in that when he tries to do so, "it shakes, it pains, there's a lot of pain." *Id*. at 60. As for his knees, he testified that he experiences knee pain and weakness while walking. *Id*. at 60-61. When asked how many minutes he is able to walk without needing to rest, Plaintiff responded, "I walk like 15 minutes, and you know, slow[,] [a]nd I can sit down for a little

3

bit and keep walking again." *Id*. at 61. He also noted that his gout and arthritis cause him to experience painful swelling in his elbows, ankles, feet, and toes. *Id*. at 63-64.

As for objective indicia, Plaintiff's treatment providers have consistently and repeatedly noted the existence and extent of these symptoms during the course of countless treatment sessions between 2014 and 2019. *See e.g., id*. at 372, 373, 379, 380, 707-08, 724-26, 728, 763-65, 789, 832-35, 836, 1271, 1309, 1413, 1516, 1518, 1520, 1531, 1532, 1534. In early November of 2014, for example, Plaintiff reported to the emergency room during a flare-up episode related to his gout (among other conditions) – his treatment providers noticed that Plaintiff was vomiting blood, experiencing dizziness, malaise, fatigue, and weakness. *Id*. at 372-73, 379-80. Thereafter, in October of 2016, his treatment providers (including Alaric Kazuichi Akashi, M.D., his primary care physician) observed that he had been suffering from "achiness [and] stiffness of both shoulders, wrists, hands, [and] knees" for the past several months. *Id*. at 707. Dr. Akashi also observed that Plaintiff's shoulders, writs, and knees were all tender to palpation. *Id*. at 708. On this occasion, diagnostic imaging showed degenerative changes in both of Plaintiff's shoulders – more specifically, imaging showed "mild acromioclavicular degenerative change" as well as "[s]clerosis in the humeral head" in both of Plaintiff shoulders, in addition to evidence of strain to the rotator cuff muscles in the left shoulder. *Id*. at 725-28. During the same month, further x-ray imaging of Plaintiff's wrists and hands showed "mild osteoarthritis involving the first carpometacarpal joint and the first interphalangeal joint" in Plaintiff's right hand, while showing "[r]adiocarpal degenerative changes" and "joint space narrowing and subchondral sclerosis" in his left hand. *Id*. at 743-44.

The following month, in December of 2016, Dr. Akashi noted that Plaintiff's arthritis and gout had combined to cause increased left knee and ankle swelling, adding that Plaintiff is "[a]ble to walk with pain, but noticed increased swelling," and, upon a physical examination, Lisa Wu, M.D., independently observed that Plaintiff is "[p]ositive for joint pain." *Id*. at 763, 765. The following year, in December of 2017, Dr. Akashi noted that Plaintiff was "[s]till [afflicted] with chronic achiness of [the] shoulders, knees, and hands." *Id*. at 789. Several weeks later, in early February of 2018, Dr. Akashi referred Plaintiff for a neurological examination as a result of which

4

1    two pertinent and striking observations were rendered: (1) Plaintiff's "[s]trength was difficult to

2    assess due to severe pain"; and (2) Plaintiff was "[u]nable to extend [his] wrists to test asterixis."[3]

3    *Id*. at 832, 834. Several days earlier, on January 31, 2018, Dr. Akashi observed that Plaintiff was

4    experiencing a decreased range of motion in his neck, as well as pain and a decreased range of

5    motion with abduction and extension in both shoulders. *Id*. at 835-36.

6        Several months later, in June of 2018, Dr. Akashi observed that Plaintiff continues to

7    suffer from left foot pain and swelling, coupled with continued "chronic achiness of shoulders,

8    knees, and hands," as well as the onset of a "resting tremor [in] both hands." *Id*. at 1308-09.

9    During the remainder of 2018, and throughout 2019, Dr. Akashi repeatedly noted that Plaintiff's

10   joints (from his neck down to his feet) were riddled with chronic swelling and persistent pain. *See*

11   *e.g., id*. at 1433, 1516, 1518 (noting also a decreased range of motion in Plaintiff's left wrist

12   coupled with olecranon bursitis of the left elbow at the upper end of the ulna). Another round of x-

13   ray images – taken in November of 2019 – showed widespread osteoarthritis in both wrists and

14   hands (*see id*. at 1520) as well as degenerative changes in both hands and wrists, and

15   atherosclerosis[4] in both ankles and feet (*see id*. at 1531). More specifically, x-ray images of

16   Plaintiff's hands revealed a "[l]oss of joint spaces of the left carpus with subchondral sclerosis and

17   small osteophytes [along with] osteoarthritic changes in the right first interphalangeal joint." *Id*. at

18   1532. X-ray images of Plaintiff's feet revealed "[m]ild degenerative change at the left anterior

19   tibiotalar [ankle] joint," attended with "vascular calcifications bilaterally in the ankles and feet

20   [and] [m]ild degenerative change at the right first MTP joint." *Id*. Lastly, x-ray imaging of

21   Plaintiff's knees showed "[m]arginal osteophytes in both knees." *Id*. at 1534.

22   //

23

24   [3] "Asterixis is a type of negative myoclonus [a spasmodic jerky contraction of groups of muscles]
     characterized by irregular lapses of posture of various body parts. It is an uncommon but important sign in
25   clinical neurology. Initially described as a 'liver flap,' its utility encompasses a galaxy of neurological and
     nonneurological situations." *See* R. Agarwal and R. Baid, *Asterixis*, Journal of Postgraduate Medicine,
26   2016 Apr-Jun; 62(2): 115–117, available on the website of the National Library of Medicine:
     https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4944342/ (last checked March 11, 2022, at 3:27 pm).

27   [4] Atherosclerosis is a disease of the arteries characterized by the deposition of plaques of fatty material on
     their inner walls.
28

United States District Court
Northern District of California

1

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

2   A person filing a claim for social security disability benefits ("the claimant") must show

3 that he has the "inability to do any substantial gainful activity by reason of any medically

4 determinable physical or mental impairment" which has lasted or is expected to last for twelve or

5 more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[5] The ALJ must consider all evidence in

6 the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-

7 step sequential evaluation process to determine whether the claimant is disabled (*see id*. §

8 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that

9 the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

10   Here, the ALJ set forth the applicable law under the required five-step sequential

11 evaluation process. *AR* at 22-23. At Step One, the claimant bears the burden of showing he has not

12 been engaged in "substantial gainful activity" since the alleged date on which the claimant became

13 disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be

14 substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ in this case

15 found that Plaintiff had not engaged in substantial gainful activity since January 15, 2015, the

16 alleged onset date. *AR* at 24. Furthermore, for Title II purposes, the ALJ found that Plaintiff met

17 the insured status requirements of the Social Security Act through June 30, 2022. *Id*.

18   At Step Two, the claimant bears the burden of showing that he has a medically

19 determinable severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii),

20 (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight

21 abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'"

22 *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). At Step

23 Two, the ALJ found that Plaintiff suffered from the following severe impairments: osteoarthritis,

24 gout, and alcohol abuse. *AR* at 24.

25   At Step Three, the ALJ compares the claimant's impairments to the impairments listed in

26

27

28

---

[5] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will generally cite to the SSI regulations herein unless it is necessary to note otherwise.

United States District Court
Northern District of California

appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments. AR at 24. Next, the ALJ determined that Plaintiff retained the RFC to perform the full range work at the medium exertional level with the following limitations and exceptions: Plaintiff can frequently climb, stoop, kneel, crouch, and crawl; he can frequently reach, handle, finger, and feel; and, he must avoid concentrated exposure to extreme cold and vibrations. *Id*. at 24-27.

At Step Four, the ALJ determined that Plaintiff is able to perform his past relevant work as a journeyman plumber. *Id*. at 27. At Step Five, the ALJ determined that based on Plaintiff's age, education, work experience, and residual functioning capacity, as well as based on the testimony of the vocational expert ("VE") that Plaintiff could perform the functions of other jobs available in the national economy – namely, that Plaintiff could work as an industrial cleaner, a hospital cleaner, or a laundry worker. *Id*. at 28-29. Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time prior between the alleged onset date, January 7, 2015, and the date of the ALJ's decision, April 1, 2020. *Id*. at 29.

## DISCUSSION

Plaintiff has raised a single issue through which error is assigned to the ALJ's reasoning for rejecting Plaintiff's pain and symptom testimony. *See* Pl.'s Mot. (dkt. 19) at 12-16 ("The ALJ failed to give specific, clear, and convincing reasons for discounting [Plaintiff's] testimony."). Defendant, on the other hand, submits that "[t]he ALJ properly found Plaintiff's subjective complaints inconsistent with the record." *See* Def.'s Mot. (dkt. 22) 4-11. The court will note at the outset that the ALJ's reasoning is non-specific in that the decision does not make it clear exactly

United States District Court
Northern District of California

1    which parts of Plaintiff's testimony were accepted and which parts were rejected[6] – however, it

2    appears from the formulation of the RFC (which included virtually no allowance for Plaintiff's

3    physical limitations) that the ALJ rejected all, or nearly all, of Plaintiff's pain and symptom

4    testimony. *See id*. at 24, 25-27. As the court catalogs the various components of ALJ's explanation

5    for rejecting Plaintiff's testimony, the court will address each iota of reasoning *seriatim*.

6         One of the ALJ's reasons for disbelieving Plaintiff's testimony was that "he had not

7    received physical therapy [and] [h]is only treatment has consisted of medication." *Id*. at 25. This

8    reasoning is flawed in that the ALJ is, in fact, quibbling with Plaintiff's doctors' approach to

9    treatment without being qualified to do so. *See e.g.*, *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805

10   (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his [or her] own judgment for competent

11   medical opinion[s] . . . and must not succumb to the temptation to play doctor and make . . .

12   independent medical findings."). The ALJ also reasoned that Plaintiff "stated that the pain in his

13   feet are from joint pain <u>and</u> gout," while noting that "he does not experience gout often [and] [h]e

14   testified that he has no other physical issues." *See* AR at 25 (emphasis added). As is evident from

15   the above-recited portions of Plaintiff's testimony (and the evidence from Plaintiff's medical

16   records), this assertion due to be rejected because it is a gross mischaracterization of the record.

17   Next, the ALJ suggested that Plaintiff's statements about the intensity, persistence, and limiting

18   effects of this symptoms "are not fully supported by the objective medical evidence and other

19   relevant documented evidence." *Id*. ("[T]he weight of the objective evidence does not support the

20   claimant's claims of disabling limitations to the degree [asserted].") This portion of the ALJ's

21   reasoning is flawed for two reasons. First, "[i]n evaluating the credibility of pain testimony after a

22   Plaintiff produces objective medical evidence of an underlying impairment, an ALJ may not reject

23   a Plaintiff's subjective complaints based solely on a lack of medical evidence to fully corroborate

24   the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). That is <u>*exactly*</u>

25   what the ALJ did in this case. However, to make matters worse, (constituting the second reason

26

27   [6] The ALJ used ubiquitous piece of boilerplate to reject Plaintiff's testimony and stated that, "the claimant's
     statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely
28   consistent with the medical evidence and other evidence of record explained in this decision." *See* AR at
     25.

United States District Court
Northern District of California

1   that this reasoning is faulty) the ALJ mischaracterized and misconstrued the medical evidence (as

2   set forth above), because it very much *does* confirm, corroborate, and bolster every bit of

3   Plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms. The

4   ALJ also faulted Plaintiff because he "received [only] routine conservative treatment for

5   complaints of osteoarthritis and gout." *See* AR at 27.  While it is true that an "unexplained, or

6   inadequately explained, failure to seek treatment" may serve as a basis for an adverse credibility

7   finding unless one of a "number of good reasons for not doing so" applies for the failure to seek

8   treatment (*see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)), it is also true that "[d]isability

9   benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain

10  for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). The ALJ's reasoning in

11  this regard is – again – flawed for several reasons. First, it's non-specific in that the ALJ's

12  decision contains no indication of what further treatment Plaintiff could have pursued but failed to

13  do so. Second, the record established that upon losing his employment due to his inability to

14  continue working, Plaintiff became homeless to where he was forced to live in a friend's

15  automobile – rendering his ability to purchase certain types of treatment (beyond that which he did

16  receive) questionable to say the least. Third, the ALJ's contention is yet another misstatement of

17  the medical evidence of record (as set forth above) which clearly demonstrates that Plaintiff

18  sought consistent and frequent treatment from his physicians between 2014 and 2019. To expect

19  more from Plaintiff in this regard would amount to nothing more than placing an arbitrary and

20  insurmountable bar for indigent disability applicants for no legitimate reason and to the benefit of

21  no one. Finally, the ALJ's last reason for discounting Plaintiff's testimony is a statement to the

22  effect that "[t]here is no medical source statement from an examining or treating physician that

23  endorses the extent of the claimant's alleged functional limitations." *See* AR at 27. As stated

24  above, an ALJ cannot reject pain and symptom testimony simply because it is not fully

25  corroborated by medical opinion evidence. *See Burch*, 400 F.3d at 680. Second, because it is

26  incumbent on the ALJ to see to it that the record is fully and properly developed,[7] it is improper

27

28  ────────────────────
    [7] The ALJ has an independent duty to investigate all issues and develop a record in order to make a fair
    determination as to disability. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). An ALJ's

9

1   for the Commissioner to attempt to now saddle Plaintiff with the consequences of the ALJ's own

2   failure to discharge his duty to fully develop the record. That is, if the ALJ considered the record

3   to be inadequately developed for the purposes of evaluating Plaintiff's credibility, the proper

4   solution would have been to further develop the record (such as, for example, by contacting

5   Plaintiff's treating physicians and asking them to render an opinion about Plaintiff's limitations).

6   *See Tonapetyan*, 242 F.3d at 1150 ("The ALJ may discharge this duty [to develop the record] in

7   several ways, including: [by] subpoenaing the claimant's physicians, submitting questions to the

8   claimant's physicians, continuing the hearing, or [by] keeping the record open after the hearing to

9   allow [for] supplementation of the record.").

10          The Commissioner uses a two-step analysis to determine the credibility of a claimant's

11   symptoms. *See* SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *3 (Mar. 16, 2016). If the

12   claimant produces evidence of an underlying impairment "which could reasonably be expected to

13   produce the pain or other symptoms alleged," and there is no evidence of malingering,[8] the ALJ

14   must evaluate the intensity and persistence of the symptoms to determine the extent to which the

15   claimant's symptoms limit the ability to perform work-related activities. *See Lingenfelter v.*

16   *Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). In this regard, the ALJ must compare the claimant's

17   subjective complaints to the objective medical evidence in the record and must identify specific,

18   clear, and convincing reasons supported by substantial evidence in the record to support his or her

19   credibility analysis. *Lingenfelter*, 504 F.3d at 1036. This is the highest standard that an ALJ is

20   required to meet in Social Security cases. *See Garrison v. Colvin*, 759 F.3d 995, 1001 (9th Cir.

21   2014). In determining a claimant's credibility, the ALJ may consider the objective medical

22   evidence, the claimant's history of treatment, work activities, and activities of daily living. *See*

23   *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather,

24   the ALJ must identify what testimony is not credible and what evidence undermines the claimant's

25

26   duty to develop the record is triggered when, for example, the ALJ considers the evidence to be ambiguous
27   or considers the record to be inadequate to allow for proper evaluation of the evidence. *See Mayes v.*
     *Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

28   [8] There has been no suggestion – let alone evidence – of malingering in this case.

United States District Court
Northern District of California

complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). In short, and for the reasons stated above, the ALJ's explanations fell short of these standards: (1) because the ALJ merely rendered generalized non-specific findings (in that the ALJ failed to expound on which parts of Plaintiff's testimony were inconsistent with which parts of the record); (2) because the ALJ's credibility finding was premised on a near-total misapprehension and mischaracterization of the record; (3) because the ALJ's reasoning was unclear and unconvincing; and, (4) because the ALJ's adverse credibility determination is unsupported by substantial evidence. Thus, because the ALJ improperly rejected Plaintiff's pain and symptoms testimony, the entirety of that testimony (as set forth above) will now be credited as true as a matter of law. *See e.g.*, *Christopher E. v. Comm'r of SSA*, No. 6:18-cv-00824-MK, 2019 U.S. Dist. LEXIS 132507, at *26 (D. Or. Aug. 7, 2019) ("The ALJ's statement is conclusory, and his analysis provides no specific, clear and convincing reasons based on substantial evidence. For this reason alone Plaintiff's testimony is credited as true."); *see also Abraham A. v. Saul*, No. 19-cv-04350-RMI, 2021 U.S. Dist. LEXIS 47072, at *20 (N.D. Cal. Mar. 11, 2021) (same).

    As such, this court's mandate on remand in this case will have a limited scope. On remand, the ALJ is **ORDERED** to do nothing more than to reengage the sequential evaluation process, from Step Three forward, while giving controlling weight to Plaintiff's testimony and the medical evidence that has been described and discussed herein. Assuming that the sequential evaluation process continues past Step Three, the ALJ is **ORDERED** to formulate the RFC on the basis of Plaintiff's testimony and the medical evidence discussed herein. *See e.g.*, *Stacy v. Colvin*, 825 F.3d 563, 566 (9th Cir. 2016) ("[T]he law of the case doctrine and the rule of mandate apply to social security administrative remands from federal court in the same way they would apply to any other case."). By way of recap, on remand the Commissioner shall be bound by this court's findings regarding this testimony and medical evidence. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (explaining that if a court were to "[a]llow the Commissioner to decide the[se] issue[s] again [doing so] would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."). Lastly, the court will note that the credit-as-true doctrine is not limited to remands for payment of benefits; indeed, the doctrine has been often applied to

11

improperly rejected evidence that will be credited as true but that is subject to further proceedings

(for the reasons expounded in *Benecke*).[9]

**CONCLUSION**

As described herein, Plaintiff's summary judgment motion (dkt. 19) is **GRANTED**, Defendant's summary judgment motion (dkt. 22) is **DENIED**, and the case is **REMANDED** for further proceedings consistent with the orders and instructions provided herein.

**IT IS SO ORDERED.**

Dated: March 16, 2022

ROBERT M. ILLMAN
United States Magistrate Judge

---

[9] *See also Baltazar v. Berryhill*, No. CV 16-8132-E, 2017 U.S. Dist. LEXIS 83515, at *20-21 (C.D. Cal. May 31, 2017) ("Accordingly, on remand the Administration shall credit as true Dr. Rubinstein's opinion regarding Plaintiff's lifting capacity and shall conduct further proceedings to determine whether Plaintiff is entitled to benefits prior to January 19, 2014."); *Stimson v. Colvin*, 194 F. Supp. 3d 986, 1004 (N.D. Cal. 2016) ("The Court therefore remands for further proceedings. In keeping with the purposes underlying the credit-as-true rule, the Commissioner is instructed on remand to accept Dr. Hoque's diagnosis for the period from September 23, 2011 until Stimson's July 2012 surgery and to devote further administrative proceedings to determining Stimson's ability to work after his surgery."); *S.W. v. Colvin*, No. CV 15-3189-PLA, 2016 U.S. Dist. LEXIS 72834, at *8 (C.D. Cal. June 2, 2016) ("in its previous remand order, which instructed the ALJ on remand to credit as true William's statements concerning plaintiff's limitations . . ."); *Page v. Colvin*, 2016 U.S. Dist. LEXIS 161286, 2016 WL 6835075, at *6 (N.D. Cal. Nov. 20, 2016) ("the *Treichler* rule should not be interpreted to require that an ALJ be given a second chance to do what the ALJ should have done correctly in the first place"); *Derr v. Colvin*, No. CV-12-00415-TUC-BPV, 2014 U.S. Dist. LEXIS 143961, at *39-40 (D. Ariz. Oct. 8, 2014) ("Accordingly, the Court will reverse the Commissioner's final decision with a remand for further proceedings consistent with this opinion. The ALJ shall, on remand, credit Dr. Mittleman's opinion as true, and credit Plaintiff's statements as true. On remand the ALJ shall make a determination regarding onset date and reviewable findings regarding substance use."); *Adame v. Colvin*, No. EDCV 12-1079 AGR, 2013 U.S. Dist. LEXIS 87694, at *17 (C.D. Cal. June 21, 2013) ("the decision of the Commissioner is reversed and this matter remanded for further proceedings consistent with this opinion. Dr. Sophon's lift/carry restriction must be credited as true on remand."); *see also McNeill v. Colvin*, 2013 U.S. Dist. LEXIS 24752, 2013 WL 645719, at *8 (C.D. Cal. 2013) (crediting treating physicians' opinions as true and remanding for further administrative proceedings rather than giving the Administration a third opportunity to provide legally sufficient reasons for rejecting a treating physicians' opinions); *Smith v. Astrue*, 2011 U.S. Dist. LEXIS 101057, 2011 WL 3962107, at *8 (C.D. Cal. Sept. 8, 2011) (same); *Toland v. Astrue*, 2011 U.S. Dist. LEXIS 15411, 2011 WL 662336, at *8 (C.D. Cal. Feb. 14, 2011) (same).